The following facts seem to be uncontroverted. On September 23, 1988, there was a fire at a house in Atmore, Escambia County, Alabama. The appellant identified the house as his and had a key, which he used to admit the fire chief to the front door. While the firemen were in the process of putting out the fire, they noticed the appellant removing green plants[3] from the roof of the house, carrying them to the back of the lot and covering them with a piece of carpet. The firemen called the police.
Detective Sergeant Charles Ellaird and Investigator Darrel Ledkins investigated and took custody of the appellant. Detective Ellaird testified that a couple of firemen helped him to bundle the green plants, later identified as marijuana. He said he then placed the bundle in the trunk of the squad car.
The marijuana was locked in the evidence room at the Atmore Police Department. On September 27, 1988, Ellaird and Ledkins stripped the leaves from "exactly 84 stalks" in the bundle, and delivered the leaves to Chief Glenn Carlee. At this time, the stalks were in the exact same position in the evidence room that they had been placed in immediately after seizure. They were in the exact same condition except that they were a little drier. After stripping the leaves, the investigators put them in a plastic bag, which they sealed. The sealed bag was delivered to the chief, who took it to the Department of Forensic Sciences.
The sealed bag was transported by Chief Carlee to the Department of Forensic Sciences in Mobile and was turned over, still sealed, to Forensic Scientist Debra Sennett. The material was stored sealed in a safe until it could be tested.
Ms. Sennett examined the material submitted to her by observation and microscopic examination of the whole mass and by chemical testing of a randomly selected representative sample. Based on this, Ms. Sennett concluded that the entire mass was marijuana and that it weighed 4.59 pounds.
The evidence bag was then resealed and placed in a box, which was itself sealed. The sealed box was returned to Investigator Ledkins and was stored under lock and key until the day of trial.
According to the opinion of the Court of Criminal Appeals, the following represents what was contained in the exhibit admitted into evidence that the state's toxicologist testified weighed 4.59 pounds:
 "Although some of defense counsel's questions to Ms. Sennett referred to 'twigs,' our consideration of all of the testimony leads to the conclusion that the 'bag' contained stems but not stalks. In conjunction with Ms. Sennett's testimony, there was testimony from Atmore police officer Charles Ellaird that he and detective Darrel Ledkins 'stripped' the plant material off the 'stalks' and 'branches' and placed what they had stripped off in a plastic garbage bag, State's exhibit 1. Detective Ledkins testified that they '[s]tripped the leaves off of the stalks' and put the 'leaves' in a garbage bag.
 "We find that the State presented prima facie evidence that the defendant was in possession of more than 2.2 pounds of marijuana and that the defendant failed to go forward and show that State's exhibit 1 contained any excludable material. The defendant's motion for a judgment of acquittal was properly denied. Wright v. State, 570 So.2d 872 (Ala.Cr.App. 1990); Day [v. State], 539 So.2d [410] at 412-13 [Ala.Cr. App. 1988]. See also Higdon v. State, 527 So.2d 1352, 1354
(Ala.Cr.App. 1988) (the forensic lab analyst testified that there were some seeds in the bag but that they represented only an 'insignificant' amount of the material."
The burden of proof is on the State, of course, to prove that petitioner did, in fact, possess more than 2.2 pounds, but if there ever was a case in which the state met its *Page 1027 
burden of proving that a person possessed more than 2.2 pounds of marijuana, it was this case.
The marijuana was on the petitioner's roof; it had roots and was "green"; petitioner attempted to secure and secrete the plant material. The evidence unquestionably shows that the leaves were stripped from 84 stalks, identified and later transported to the lab. According to the opinion of the Court of Criminal Appeals, there were admittedly some seeds included in the material. I have not examined the exhibit, but is there any reasonable doubt that the material in the exhibit was prohibited material, although there is no evidence that the state actually tested the seeds to see if they had been artificially sterilized, the only obvious exception included in the statute? Of course not.
Does the majority hold that the state must prove a negative — that the seeds have not been artificially sterilized? Clearly, the exception in the statute refers to seeds that have been sterilized. The plants here still had their roots, they were green, there were 84 of them, 5 to 6 feet tall. Even if the State were required to prove the negative — that the seeds were not sterilized — the State proved the negative by proving the positive — Exhibit 1 contained green leafy marijuana with some seeds and twigs (not excludable stalks) in it.
During oral arguments, counsel for the petitioner admitted that there could be legitimate uses for "stalks" and seeds that had been artificially sterilized. That is the purpose of the exception. There is no doubt in my mind that the State proved that the material contained in Exhibit 1 was a prohibited substance. Consequently, I must disagree with the opinion that concludes otherwise.
STEAGALL, J., concurs.
[3] Testimony offered at trial gave the following descriptions of the green plants: "plants that still had roots," "some bushes . . . green and approximately 4 to 5 feet," "bunch of plants," "a bundle like, green plants, leafy . . . it was a bunch of them."